**136 Nev., Advance Opinion 8**
IN THE SUPREME COURT OF THE STATE OF NEVADA

9352 CRANESBILL TRUST; TEAL
PETALS ST. TRUST; AND IYAD
HADDAD,
Appellants,
vs.
WELLS FARGO BANK, N.A.,
Respondent.

No. 76017

**FILED**

MAR 05 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment in an action to quiet title. Eighth Judicial District Court, Clark County; Linda Marie Bell, Judge.

*Affirmed in part, vacated in part, and remanded.*

Law Offices of Michael F. Bohn, Ltd., and Michael F. Bohn, Henderson, for Appellants.

Snell & Wilmer, LLP, and Kelly H. Dove, Las Vegas; Snell & Wilmer, LLP, and Andrew M. Jacobs, Tucson, Arizona, for Respondent.

BEFORE PICKERING, C.J., PARRAGUIRRE and CADISH, JJ.

*OPINION*

By the Court, PICKERING, C.J.:

This is a homeowners' association (HOA) lien foreclosure dispute between the holder of the first deed of trust on the property and the assignee of the buyer at the lien foreclosure sale. After receiving the HOA's

SUPREME COURT
OF
NEVADA

(O) 1947A

20-08766

notice of delinquency, the homeowner made several partial payments to the HOA. The homeowner did not specify how she wanted the HOA to apply the payments—whether to the superpriority or subpriority portion of the lien. If applied 100% to the superpriority portion, the homeowner's payments were enough to cure the default as to that portion of the lien, rendering the sale void as to the holder of the first deed of trust.

The case came before the district court on the parties' cross-motions for summary judgment. The district court held that, because the homeowner's payments exceeded the defaulted superpriority lien amount, that default was cured such that the foreclosure sale did not extinguish the first deed of trust. In so holding, the district court rejected the buyer's assignee's argument that only the first deed of trust holder, not the homeowner, can cure a superpriority lien default. While we agree that a homeowner can cure a superpriority default, the parties did not develop and the district court therefore did not decide whether the homeowner's partial payments in fact cured the superpriority lien default. Proper allocation of partial payments on an overdue debt requires examination of the actions and express or presumed intent of the debtor and creditor and an assessment of the competing equities involved. While we affirm the district court's decision denying summary judgment to the buyer's assignee on the record presented, we vacate its grant of summary judgment to the holder of the first deed of trust and remand for further proceedings consistent with this opinion on the proper allocation of the partial payments the homeowner made.

I.

The former owner of 9352 Cranesbill Court (the Property) fell behind on her payments to the governing HOA for community assessments. The HOA initiated foreclosure proceedings, recording a delinquent

SUPREME COURT
OF
NEVADA

(O) 1947A

assessment lien, a notice of default, and a notice of the foreclosure sale. The superpriority portion of the HOA's lien totaled $534, representing three months of assessments at $56 per month and six months of assessments at $61 per month. *Cf. Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 606, 427 P.3d 113, 117 (2018) (holding that, under NRS 116.3116(2) (2012), "the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid [common expense] assessments").[1] After the HOA filed its notice of delinquent assessments and before the foreclosure sale, the homeowner made payments to the HOA totaling $798.50. Despite these payments, the amount owed at the time of the foreclosure sale had grown to $3,932.58. 9352 Cranesbill Trust bought the Property at the foreclosure sale for $4,900, and then deeded it to Teal Petals St. Trust.

Litigation ensued between the holder of the first deed of trust, respondent Wells Fargo Bank, N.A., and Teal Petals and its assignors (collectively, Teal Petals or appellants), contesting whether the sale extinguished the first deed of trust on the Property. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 758, 334 P.3d 408, 419 (2014) (holding that foreclosure of the superpriority portion of an HOA's lien extinguishes a first deed of trust). The district court granted summary judgment to Wells Fargo and denied summary judgment to Teal Petals. The district court rejected Teal Petals' argument that only the holder of the first deed of trust, not the homeowner, could pay off a defaulted superpriority lien. The district court further held that, because the homeowner's payments exceeded the superpriority lien amount, the default as to that

---

[1]All references to NRS Chapter 116 are to the pre-2015 amendments.

portion of the lien was cured and the foreclosure sale did not extinguish Wells Fargo's first deed of trust. *Cf. Bank of Am.*, 134 Nev. at 612, 427 P.3d at 121 (recognizing that payment of the defaulted superpriority portion of an HOA's lien cures the default as to that portion of the lien such that an ensuing foreclosure sale does not extinguish the first deed of trust). This appeal followed.

## II.

Teal Petals argues that the homeowner's payments cannot cure the default on the superpriority portion of the HOA's lien and, because the superpriority portion of the lien was in default when the foreclosure sale occurred, the sale extinguished Wells Fargo's first deed of trust on the Property. Teal Petals further argues that even if a homeowner's payments can cure a superpriority default, the default was not so cured in this case because there is no evidence that the homeowner or the HOA allocated the payments to the superpriority portion of the lien. Wells Fargo responds that the district court correctly determined that a homeowner, equally with the first deed of trust holder, can cure a superpriority lien default.

We review the grant or denial of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate if the pleadings and other evidence on file, viewed in the light most favorable to the nonmoving party, demonstrate that no genuine issue of material fact remains in dispute and that the moving party is entitled to judgment as a matter of law. *Id.* "A genuine issue of material fact exists if, based on the evidence presented, a reasonable jury could return a verdict for the nonmoving party." *Butler v. Bayer*, 123 Nev. 450, 457-58, 168 P.3d 1055, 1061 (2007).

## A.

The district court determined that NRS Chapter 116 "does not limit who can satisfy the [default on] the superpriority portion of the lien," such that a homeowner's payments can cure a superpriority default. Appellants assert that this is an error of law because the superpriority lien statute, NRS 116.3116(2), requires the first deed of trust holder to cure any superpriority default. Wells Fargo responds that the district court correctly found that the statute is not so limited. We agree with the district court and Wells Fargo.

Appellants rely on comments and reports from the Joint Editorial Board for Uniform Real Property Acts to argue that only the first deed of trust holder can cure a superpriority default. The Board drafted the uniform act that Nevada based its HOA foreclosure statutes on, *see SFR*, 130 Nev. at 744, 334 P.3d at 410, and has commented that the HOA foreclosure scheme was a "specially devised mechanism," *id.*, to "strike[ ] an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of lenders," Unif. Common Interest Ownership Act (1982) (UCIOA) § 3-116 cmt. 1, 7 pt. 2 U.L.A. 124;[2] *see also SFR*, 130 Nev. at 748-49, 334 P.3d at 412-13 (quoting the UCIOA commentary). The Board recognized that, as a practical matter, the first deed of trust holder would "most likely pay the [unpaid] assessments demanded by the association rather than have the association foreclose on the unit." UCIOA § 3-116 cmt. 1; *see* Report of the Joint Editorial Board for Uniform Real Property Acts,

---

[2]Because NRS Chapter 116 is based on the 1982 version of the UCIOA, we rely on the comments to that version to resolve the issues presented herein.

 

*The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act* 4 (2013). While this comment demonstrates the Board's *expectation* that the first deed of trust holder would cure any superpriority default, appellants provide *no binding legal authority* or statutory language that *requires* the first deed of trust holder to do so or *prohibits* a homeowner from curing what is, after all, the homeowner's HOA lien default. Equally with the first deed of trust holder, the homeowner has a significant incentive to cure the superpriority default: Even if the homeowner lacks the means to cure the entire default, she can preserve the deed of trust by curing the superpriority default, meaning the property can still satisfy the debt the homeowner owes the holder of the first deed of trust.

The statutes codified in NRS Chapter 116 do not support that only the first deed of trust holder, not the homeowner, can cure a superpriority lien default. *See, e.g.*, NRS 116.3116 (addressing the creation, perfection, priority, and extinguishing/curing of HOA liens); NRS 116.31163-.31168 (providing the requirements to foreclose on HOA liens). In fact, NRS Chapter 116 *obligates* the homeowner to pay her HOA association fees or assessments. *See* NRS 116.3102(1)(b) (permitting HOAs to collect assessments for common area expenses from homeowners); NRS 116.3116(1) (giving the HOA a lien for any unpaid assessments). As the person primarily obligated to pay the HOA fees, the homeowner has the legal ability to pay the superpriority portion of the lien, directly or through payments made to and by the first deed of trust holder. *See* NRS 116.3116(3) (2013) (allowing a first deed of trust holder to pay HOA assessments on behalf of the homeowner). The reference in the 2015 amendment to NRS 116.31164 to "the holder of the security interest" curing

SUPREME COURT
OF
NEVADA

(O) 1947A

6

a superpriority default does not change this commonsense reading of the statutory scheme. While the first deed of trust holder can pay off a superpriority lien default, so, too, can the homeowner. *See* 2015 Nev. Stat., ch. 266, § 5, at 1340-41.

Teal Petals' contrary argument fails to take into account the contractual relationship between the homeowner and the first deed of trust holder. This contract requires the homeowner to remain current on any assessment that, if left unpaid, would cause a lien to be placed on the property secured by the deed of trust: "Borrower shall promptly discharge any lien which has priority over [the first deed of trust] . . . ." The district court correctly rejected Teal Petals' contention that the homeowner could not cure the superpriority lien default.

### B.

Appellants argue that even if a homeowner can cure a superpriority default, the homeowner's payments in this case did not do so because the payments were less than the entire delinquent lien amount. They further argue that Wells Fargo produced no evidence that the HOA applied the homeowner's payments to the superpriority portion of the lien. Wells Fargo asserts that the district court correctly determined that, because the amount of the payments exceeded the amount of the superpriority default, the payments cured the superpriority default. These arguments implicate unresolved issues of law and fact that require us to vacate and remand for further development in the district court.

Although not cited by the parties, *Able Electric, Inc. v. Kaufman*, 104 Nev. 29, 752 P.2d 218 (1988), addresses some of the rules that courts follow in deciding how to allocate partial payments on overdue debts. In general, "[w]hen a debtor partially satisfies a judgment, that

debtor has the right to make an appropriation of such payment to the particular obligations outstanding." *Id.* at 30-31, 32, 752 P.2d at 219, 220. The debtor must direct that appropriation "at the time the payment is made." *Id.* at 32, 752 P.2d at 220. If the debtor does not direct how to apply the payment to her account, the creditor may determine how to allocate the payment. *Id.* at 32, 752 P.2d at 220. But, in that circumstance, once the creditor applies the partial payment, "the creditor may not thereafter change the application to another debt." *Id.* Furthermore, "[t]he creditor's right to appropriate the payments received terminates at the time a controversy regarding such application arises." *Id.*

If neither the debtor nor the creditor makes a specific application of the payment, then it falls to the court to determine how to apply the payment. *Id.* "In directing the application of a payment, the district court should be guided by the basic principles of justice and equity so that a fair result can be achieved." *Id.*; *see also* 70 C.J.S. Payment § 53 (2019) (recognizing a court's ability to allocate a payment and suggesting that the court should make the allocation "in view of all of the circumstances, as is most in accord with justice and equity and will best protect and maintain the rights of both the debtor and creditor"). In applying this rule in *Able Electric*, this court determined that "equity and justice [would] be best served by a disposition that is most favorable to the creditor at the time the appropriation is made," based on the assumption that the debtor desired to pay all of the debts making up the judgment lien in that case.[3] 104 Nev. at 33, 752 P.2d at 220. Other jurisdictions have

---

[3]That assumption may not apply in NRS Chapter 116 payment allocation cases, since it seems likely that a homeowner would prefer to cure the default on the superpriority lien before satisfying any other debts owed

stated a legal preference for paying the earliest matured debts. *See* 70 C.J.S. Payment § 54-55 (2019) (stating that the preference should resolve the matter unless "the [creditor and debtor] have agreed to a different application, or where a different application is required on equitable grounds, or where a statute so requires") (footnote omitted; citing supporting authority); *see also* 5 Miller & Starr, Cal. Real Estate § 13.90 (4th ed. 2019) (noting that, under the California Civil Code, courts apply unallocated payments to "the obligation earliest in date of maturity" after interest and principal currently due). The resolution of this issue may vary depending on whether the district court considers the unpaid HOA assessments and other costs the homeowner is required to pay to the HOA, such as the costs of foreclosure, to be on a running account, and therefore a single debt, or whether it considers there to be multiple accounts.[4] *Compare* 60 Am. Jur. 2d *Payment* § 72 (2019) (addressing a single running account), *with Able Elec.*, 104 Nev. at 33, 752 P.2d at 220 (addressing multiple accounts).

These issues deserve full development and briefing in district court. *See Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 216, 163 P.3d 405, 407 (2007) (treating issues regarding intent as questions of fact); *see*

---

to an HOA to avoid a superpriority lien foreclosure and the consequent loss of security to satisfy the obligation secured by the first deed of trust.

[4]If considered multiple accounts, and "neither the debtor nor the creditor has exercised his power with respect to the application of a payment as between two or more matured debts, the payment is applied to debts to which the creditor could have applied it with just regard to the interest of third persons, the debtor and the creditor." Restatement (Second) of Contracts § 260(1) (2019). In that case, a payment is generally allocated first "to a debt that the debtor is under a duty to a third person to pay immediately." *Id.* at § 260(2)(a).

*also Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance."). While we affirm the district court's legal determination that the homeowner, equally with the first deed of trust holder, can cure a superpriority lien default, we vacate and remand for the parties to develop and the district court to determine the proper allocation of the homeowner's payments under the principles and authorities just discussed.

C.

Teal Petals' remaining arguments fail. Assuming for the sake of argument that Teal Petals qualifies as a bona fide purchaser for value, that status would not override the void sale that results when a foreclosure sale proceeds in the face of a cured default. *See Bank of Am.*, 134 Nev. at 612, 427 P.3d at 121 (holding that a party's status as a bona fide purchaser "is irrelevant when a defect in the foreclosure proceeding renders the sale void," which is the case when the sale proceeds as to the first deed of trust despite the superpriority default having been cured). We also decline to address Wells Fargo's arguments that the sale should be set aside on equitable grounds because the sale was commercially unreasonable. Although the district court orally stated at the summary judgment hearing that it "[did not] find that the sale was commercially unreasonable," the order includes no such language. A court's oral pronouncement is "ineffective for any purpose," *Rust v. Clark Cty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987), and this court will not address issues that the district court did not directly resolve, *see Yellow Cab of Reno, Inc. v. Second Judicial Dist. Court*, 127 Nev. 583, 592 n.6, 262 P.3d 699, 704 n.6

SUPREME COURT
OF
NEVADA

(O) 1947A

10

(2011) (declining to address a legal issue that the district court did not reach).

### III.

The homeowner has the ability to cure a default as to the superpriority portion of an HOA lien. Allocating partial payments by a homeowner to her HOA depends on the express or implied intent and actions of the homeowner and the HOA and, if indeterminate, an assessment of the competing equities involved. We therefore affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

_____, C.J.
Pickering

We concur:

_____, J.
Parraguirre

_____, J.
Cadish