140 Nev., Advance Opinion 43

IN THE SUPREME COURT OF THE STATE OF NEVADA

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS TRUSTEE RALI
2006QA5,
Appellant,
vs.
SFR INVESTMENTS POOL 1, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 85073

FILED

JUN 27 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment in an action to quiet title. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Reversed and remanded.*

Wright, Finlay & Zak, LLP, and Darren T. Brenner, Christina V. Miller, and Stephanie A. Garabedian, Las Vegas,
for Appellant.

Hanks Law Group and Karen L. Hanks and Chantel M. Schimming, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

24-22326

*OPINION*

By the Court, BELL, J.:

This appeal involves a dispute between the first deed of trust holder and the purchaser of a property at a homeowners' association (HOA) lien foreclosure sale. The issue presented requires us to examine the parameters of *9352 Cranesbill Trust v. Wells Fargo Bank, N.A.*, 136 Nev. 76, 76, 459 P.3d 227, 228 (2020). *Cranesbill* provided for allocation of a defaulting homeowner's partial payments to an HOA superpriority lien. Under *Cranesbill*, a court must look at any allocation by the homeowner at the time of payment, application of the payment by the HOA prior to any dispute about allocation, and the equities involved. We now make clear that absent express direction of the homeowner to the contrary, the HOA may not apply a payment in a way that jeopardizes the first deed of trust holder's interest and deprives the homeowner of the security on the homeowner's mortgage. Additionally, principles of justice and equity presume a superpriority lien is satisfied first, unless the court has a compelling reason to conclude otherwise.

Here, the district court concluded under *Cranesbill* that the homeowner's partial payments failed to satisfy the superpriority lien, meaning that the subsequent HOA foreclosure extinguished the first deed of trust. We disagree. Therefore, we reverse the district court.

*FACTS AND PROCEDURAL HISTORY*

In 2006, Anthony Swaggerty missed several monthly HOA dues payments for his home in Las Vegas. The dues were $90 per month in 2006 and increased to $91 per month in 2007. Swaggerty's arrears quickly ballooned due to collection costs, late fees, interest, and other charges. By March 2007, when the HOA's foreclosure agent and trustee Nevada

 

Association Services (NAS) filed a notice of lien, the superpriority portion of the HOA's lien totaled $523.

In June 2008, Swaggerty declared Chapter 13 bankruptcy and set up a plan to pay off debts, including the HOA debt. The next month, Swaggerty paid $91 directly to the HOA. The bankruptcy reorganization plan ultimately failed.

In May 2009, Swaggerty sent a request for a payment plan through NAS to settle the HOA debt. Along with the request for a payment plan, Swaggerty sent a $500 payment. NAS charged $150 to set up the payment plan, which Swaggerty agreed to at the time. In an August 2009 correspondence, Swaggerty characterized the payment, minus the setup fee, as a "down payment" on his arrears. Of the $500, NAS kept $125, sent $125 to a title company, sent $125 to a posting company, and forwarded $125 to the HOA.

NAS responded to the request for a payment plan in June. The proposed plan provided that payments would first cover current monthly HOA dues and stated, "[y]our association may apply your payments to assessments, penalties, if any, fines, if any, late fees, interest, collection costs and other charges." Apparently, Swaggerty never signed the plan; however, the next month, he sent another $500 to NAS. NAS allocated the payment in the same manner, forwarding $125 to the HOA.

In May 2011, Swaggerty, NAS, and the HOA entered into a new payment agreement. Under the new plan, Swaggerty agreed to make monthly payments to the HOA, with current dues paid first and the rest going to NAS to pay collection costs. The HOA agreed that it would attempt to foreclose only if Swaggerty breached the agreement, and the HOA agreed to waive some of the collection costs, fines, penalties, and interest if

Swaggerty remained in compliance. Over the next two years, Swaggerty remained in compliance with the plan. During that time, $220 was applied towards the delinquent HOA dues. The parties agree that the $220 from these payments would apply to the superpriority portion of the HOA's lien.

Although Swaggerty never breached the May 2011 agreement, the HOA decided to pursue foreclosure on the home in July 2013. When NAS declined to move forward with foreclosure, citing Swaggerty's compliance with the payment plan, the HOA substituted Alessi & Koenig, LLC (A&K), as trustee. A&K then foreclosed on the property. In July 2014, Respondent SFR Investments Pool 1, LLC, purchased the property at the foreclosure sale for $56,000. At the time, the home was worth approximately $441,000.

Appellant Deutsche Bank Trust Company Americas as Trustee Rali 2006QA5, the holder of the first deed of trust on the property, brought a quiet title action against SFR and the HOA. Deutsche Bank principally asserted that the homeowner's partial payments had satisfied the superpriority portion of the HOA lien so that the HOA foreclosure did not extinguish the first deed of trust. Deutsche Bank alternatively asserted the foreclosure should be set aside because the HOA had engaged in fraud, unfairness, and oppression. Both Deutsche Bank and SFR sought summary judgment.

Initially, the district court granted summary judgment in favor of Deutsche Bank, finding Swaggerty's pre-foreclosure payments satisfied the superpriority lien and concluding SFR took the property subject to Deutsche Bank's deed of trust. SFR appealed to this court. On appeal, we vacated and remanded with instructions for the district court to consider the analysis in the then recently decided case *9352 Cranesbill Trust v. Wells*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Fargo Bank, N.A.*, 136 Nev. 76, 459 P.3d 227 (2020). *SFR Invs. Pool 1, LLC v. Deutsche Bank Tr. Co. Americas as Trustee Rali 2006QA5*, No. 78335, 2021 WL 931238 (Nev. Mar. 10, 2021) (Order Vacating Judgment and Remanding).

On remand, both Deutsche Bank and SFR filed supplemental briefs concerning the application of *Cranesbill* and contesting the allocations of the payments. For purposes of the district court's analysis, the parties stipulated that the superpriority amount at issue was $523 and stipulated to the documentary record. But the parties disagreed as to how Swaggerty and the HOA intended the payments to be allocated. After argument, the district court applied *Cranesbill* and concluded that $0 of the $91 in July 2008, $34 of the $500 from May 2009, $34 of the $500 from July 2009, and $220 from payments under the May 2011 payment agreement applied to the superpriority portion of the lien. The district court ruled in favor of SFR, concluding that $235 of the superpriority lien remained unsatisfied, so the HOA foreclosure extinguished Deutsche Bank's deed of trust.

The parties disagree on the underlying nature of the judgment. The district court order is entitled "Findings of Fact, Conclusions of Law and Judgment." The order does not specify whether the court was ruling on summary judgment or entering a judgment following a bench trial. Despite ruling in SFR's favor, the district court declined to consider Deutsche Bank's alternative grounds for relief on the fraud, unfairness, and oppression of the foreclosure. Deutsche Bank now appeals.

## DISCUSSION

Deutsche Bank challenges the district court's conclusion that the homeowner's partial payments failed to satisfy the HOA superpriority lien under *Cranesbill*. *Cranesbill* requires a court to look for direction from

SUPREME COURT
OF
NEVADA

(O) 1947A

5

the homeowner allocating a payment at the time payment was made. 136 Nev. at 80, 459 P.3d at 231. Without any direction from the homeowner, a court must determine if the HOA clearly allocated the payment prior to any dispute regarding allocation. Absent allocations by the homeowner or HOA, the court must turn to principles of justice and equity to determine how to allocate the payment. *Id.* We now hold that, unless expressly authorized by the homeowner, the HOA may not allocate a payment in a way that results in a forfeiture of the first deed of trust holder's interest and deprives the homeowner of the security in the home. Such allocations are invalid, and a court may not consider them in conducting its analysis.

*We review the case de novo*

As a preliminary matter, it is difficult to ascertain whether the district court resolved this matter on summary judgment or as a bench trial, and the parties do not agree on this point. Our standard of review typically changes depending upon whether we review a granted motion for summary judgment or the judgment following a bench trial. We review grants of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). After a bench trial, the district court's legal conclusions are still reviewed de novo, but factual findings will not be disturbed unless they are unsupported by substantial evidence or are clearly erroneous. *Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018).

In our view, the case is still in the posture of summary judgment and should be reviewed de novo. This court originally vacated and remanded the case after a grant of summary judgment to Deutsche Bank. The district court never found in its rulings or on the record that a genuine dispute of material fact existed such that a trial was necessary. *See Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 291 n.2, 662 P.2d 610, 614

n.2 (1983) (suggesting that the district court should determine whether a genuine issue of material facts exists before proceeding to trial where there are cross-motions for summary judgment). The parties agreed during oral argument before this court that no material facts were in dispute when considering the *Cranesbill* analysis, suggesting the case was resolved at the summary judgment stage below.

While we understand the procedural posture of this case as the district court granting SFR's prior motion for summary judgment following remand from the first appeal, the difference in the standard of review does not alter the outcome of the case. Even under the more deferential standard of review following a bench trial, we would still conclude that the district court erred in ruling for SFR and would reverse.

Cranesbill *provides a test for courts to allocate partial payments to HOA liens*

Nevada law provides that up to nine months of unpaid HOA dues constitutes a superpriority lien on a property, taking priority over other interests, including the first deed of trust, while any other HOA debt remains junior. NRS 116.3116(3)(b). When an HOA forecloses on this superpriority lien, the foreclosure extinguishes all junior liens, including the first deed of trust. *Deutsche Bank Nat'l Tr. Co. v. Fid. Nat'l Title Ins. Co.*, 139 Nev., Adv. Op. 45, 536 P.3d 915, 924 (2023). *Cranesbill* examined what happens to the superpriority lien when the HOA receives partial payments from the homeowner.

"The homeowner has the ability to cure a default as to the superpriority portion of an HOA lien." *Cranesbill*, 136 Nev. at 82, 459 P.3d at 232. *Cranesbill* considered the situation of a homeowner who tendered payment sufficient to cover the superpriority portion of the HOA lien but did not satisfy the whole amount of her HOA arrears. *Id.* at 76, 459 P.3d at

228. We held that "[p]roper allocation of partial payments" requires analysis of the intent of the parties "and an assessment of the competing equities involved." *Id.* at 77, 459 P.3d at 229.

*Cranesbill* stressed that a debtor must have the right to decide what part of the debt a payment satisfies. *Id.* at 80, 459 P.3d at 231. If the debtor fails to allocate payment at the time payment is made, the reviewing court should also consider any allocation by the creditor prior to a disagreement about the allocation. *Id.* Absent a clear allocation, *Cranesbill* requires a court to look to "the basic principles of justice and equity so that a fair result can be achieved." *Id.* (internal quotation marks omitted). Many factors weigh in the equities analysis, including the preference for paying off the earliest matured debts first, the homeowner's presumed preference to pay the superpriority amount to avoid the loss of security in the home, and the homeowner's covenants with the first deed of trust holder. *Id.* at 81 & n.3, 459 P.3d at 231 & n.3. *Cranesbill* focused on achieving a just and equitable outcome for homeowners and HOAs in situations where payments did not fully satisfy arrears.

*The HOA may not allocate payments to cause forfeitures for nonpayment on debt*

When a homeowner makes partial payments to an HOA, *Cranesbill* instructs courts to follow the direction of the homeowner at the time of payment as to how those payments are allocated. *Id.* at 80, 459 P.3d at 231 ("The debtor must direct that appropriation at the time the payment is made." (internal quotation marks omitted)). Direction from the homeowner controls over any other indications of how a payment should be allocated. *Id.*

If the homeowner provides no direction, courts must consider any allocation by HOAs so long as the allocation is not changed and the allocation occurs prior to any dispute arising. *Id.* ("If the debtor does not direct how to apply the payment to her account, the creditor may determine how to allocate the payment."). We now recognize that within the *Cranesbill* framework an HOA's right to allocate payments is not unlimited. Creditors may not selectively apply payments in a way that causes forfeiture for nonpayment on part of the debt. *See* 28 Richard A. Lord, *Williston on Contracts* § 72:10 (4th ed. 2020) ("[W]here the creditor knows or has reason to know that the nonpayment of one debt . . . will cause a forfeiture, the creditor cannot appropriate a payment to other claims and must, instead, apply the payment to prevent the forfeiture."). A creditor also cannot selectively privilege less secured debts to the disadvantage of more secured debts held by third parties. *Id.* Thus, HOAs may not unilaterally direct partial payments in a manner that causes forfeiture of the bank's interest in the first deed of trust, nor can an HOA unilaterally privilege its own less secured debts (its junior lien) over the more secured debt held by the bank (the first deed of trust).

Similarly, the HOA may not selectively direct payment in a way that leaves the homeowner personally liable for mortgage debt without the collateral of the property. Even when a first deed of trust is extinguished from a property, the former homeowner may remain personally obligated to repay the amount borrowed. *See McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC*, 121 Nev. 812, 816, 123 P.3d 748, 750 (2005) (recognizing both foreclosure and personal suit as methods of enforcing rights secured by liens on real estate). The loss of security to satisfy the obligation when the first deed of trust is extinguished represents a forfeiture through

SUPREME COURT
OF
NEVADA

(O) 1947A

9

nonpayment of a particular part of the debt owed to the HOA. In the absence of express allocation by the debtor, the HOA may not direct payments in a way that preserves the HOA's superpriority lien to the detriment of the homeowner and the bank.

The equities analysis under *Cranesbill* also supports this conclusion. 136 Nev. at 80, 459 P.3d at 231. The equities favor curing the superpriority lien first because homeowners presumptively wish to retain the security to satisfy the first deed of trust on the property. *Id.* at 81 n.3, 459 P.3d at 231 n.3. The homeowner's independent obligations to the first deed of trust holder also warrant consideration under the equities. *Id.* at 81 n.4, 459 P.3d at 231 n.4. Thus, we conclude that the HOA creditor's opportunity to allocate payment may not be used to disadvantage the bank and the homeowner with the risk of forfeiture through nonpayment of a part of the HOA debt.

*Applying* Cranesbill *to Swaggerty's payments shows that Swaggerty satisfied the superpriority lien*

Deutsche Bank asserts that the superpriority amount here was $523 because the notice of lien was filed in March of 2007 when Swaggerty was not yet nine months in arrears. The district court used the figure of $523 in its analysis, which SFR agreed to "for the sake of argument." The $523 amount appears to be a correct analysis under *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, 133 Nev. 21, 25-26, 388 P.3d 226, 231-32 (2017) (concluding that only those monthly dues in arrears at the time the HOA files its notice of lien constitute the superpriority portion of the lien).

The parties agree that Swaggerty paid at least $220 towards the superpriority portion of the lien with his periodic payments starting in May 2011. The pertinent question before us, then, is whether Swaggerty's

other three payments—$91 in July 2008, $500 in May 2009, and $500 in July 2009—satisfied the outstanding $303 of the superpriority lien under the *Cranesbill* analysis. We conclude that they did.

*An analysis of Swaggerty's first payment shows that the entire payment applies to current monthly dues*

Swaggerty made his first contested payment of $91 in July 2008. We agree with the district court's conclusion that none of that payment should be applied to the superpriority lien. Swaggerty paid the HOA without any direction, so the court cannot look to Swaggerty's direction of the payment. *Cranesbill*, 136 Nev. at 80, 459 P.3d at 231. The HOA also made no allocation apparent from the record when it received Swaggerty's payment, so the court cannot consider the HOA's allocation of this payment either. *Id.*

Without direction from the homeowner allocating payment or allocation by the HOA at the time payment was made, we turn to the equities to allocate this payment. The equities presume application of the payment to the superpriority lien first, absent a compelling reason to conclude otherwise. Here, though, there is a compelling reason to conclude that this $91 applied to Swaggerty's current monthly HOA dues, not his superpriority balance. Swaggerty had an approved Chapter 13 bankruptcy plan in place that accounted for all his arrears at the time he made this payment. The bankruptcy plan required Swaggerty to make payments to the bankruptcy trustee in order to receive relief from his debts. Nevertheless, Swaggerty sent an amount exactly equaling one month's current dues directly to the HOA, rather than to the bankruptcy trustee. Under the circumstances of the bankruptcy for this payment, we conclude that the whole of the $91 covered Swaggerty's current dues, and none applied to his superpriority lien.

*An analysis of Swaggerty's second payment shows that $150 must be allocated to setting up a payment plan, and the remaining $350 applied to the superpriority lien*

Swaggerty made the second contested payment of $500 in May 2009. When Swaggerty made this May 2009 payment, he signed a form to establish a payment plan through NAS to settle his outstanding HOA obligations. That form required a $150 setup charge, payable to NAS, to establish the plan. The debtor's allocations at the time of the payment control. *Cranesbill*, 136 Nev. at 80, 459 P.3d at 231. Consequently, $150 of Swaggerty's payment satisfies the setup charge for the payment plan. Swaggerty made no other allocations at the time of payment.

The record shows NAS retained $375 of Swaggerty's payment for various fees and sent $125 of Swaggerty's payment to the HOA. No record shows how the HOA allocated that $125. The allocation made by the HOA and its agent prioritized the HOA's less secured debt and risked forfeiture of the bank's and Swaggerty's interests through nonpayment. The creditor may neither prioritize the less secured portion of their debt over the more secured bank debt nor allocate payment in a way that interferes with the homeowner's obligation to the first deed of trust holder to protect the security interest in the home. *See* 28 *Williston on Contracts*, *supra*, at § 72:10 (stating that, as a general rule, creditors "may be precluded from applying payments made as they choose, even though the debtor has not directed the application of the payment"). By diverting three-quarters of Swaggerty's payment to this less-secured portion of the debt first, the HOA risked forfeiture of the bank's and Swaggerty's interests in the home through nonpayment of the superpriority lien, which they may not do. Thus, these allocations by the HOA are invalid, and we do not consider them.

SUPREME COURT
OF
NEVADA

(O) 1947A

Without direction from the homeowner or valid allocations from the HOA as to the remaining $350, the court turns to the equities to allocate the payment. The equities support a presumption that payments should be allocated to the superpriority portion first. The court assumes, absent direction to the contrary, that a homeowner would prefer to avoid the loss of security to satisfy the homeowner's obligations to the first deed of trust holder. *Cranesbill*, 136 Nev. at 81 n.3, 459 P.3d at 231 n.3. The homeowner is also usually obligated by agreement with the first deed of trust holder to protect the first deed of trust, a factor favoring allocation of payments to the superpriority portion of the amount due. *Id.* at 81 n.4, 459 P.3d at 231 n.4. Finally, the long-standing principle of paying the oldest debt first generally supports applying payments to the superpriority portion of an HOA lien, as typically the superpriority piece will constitute the oldest debt. *See Foster v. Marshman*, 96 Nev. 475, 479, 611 P.2d 197, 200 (1980).

Here, all these considerations weigh toward applying the remaining $350 to Swaggerty's superpriority lien. Swaggerty would, assumably, wish to avoid the loss of security in the home. The mortgage covenants obligated Swaggerty to preserve the first deed of trust, and the superpriority lien amount was debt accrued during the very beginning of Swaggerty's financial troubles. Further, in an email to the HOA a few months after the first $500 payment, Swaggerty called the $350 a "down payment" on the arrears. This communication does not represent an allocation at the time of payment but provides further support of application of the remainder of Swaggerty's payment to the superpriority lien amount.

The district court determined that only $34 of the $500 payment applied to the superpriority lien. That court's determination was based on a clearly erroneous conclusion that "this payment was made as part of a requested payment plan." Although Swaggerty agreed to a start-up charge and requested that a plan be set up in May 2009, no payment plan with agreed-to payment allocation terms existed when Swaggerty made the payment in question. With no allocation by the debtor at the time of payment, $350 of the payment should have been allocated to the superpriority lien based on the equities.

*The May 2009 payment and the stipulated payments satisfy the superpriority lien*

When the $350 from the May 2009 payment is added to the agreed upon $220 from later payments, the amount exceeds the outstanding $523 superpriority lien. Therefore, we need not consider Swaggerty's last contested payment from July 2009. Because Swaggerty's partial payments satisfied the superpriority lien, the HOA's foreclosure on the remaining junior lien did not extinguish Deutsche Bank's deed of trust. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 748, 334 P.3d 408, 412-13 (2014) (concluding that only a foreclosure on the superpriority portion can extinguish the first deed of trust), *superseded by statute on other grounds as stated in Saticoy Bay LLC 9050 W Warm Springs 2079 v. Nev. Ass'n Servs.*, 135 Nev. 180, 444 P.3d 428 (2019). SFR therefore took the property subject to Deutsche Bank's deed of trust. *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 610, 427 P.3d 113, 120 (2018).

SFR summarily argues that, notwithstanding *Cranesbill*, it should be protected as a bona fide purchaser for value under NRS 111.180(1). This court has previously rejected this argument because tender of payment renders a sale void as to the superpriority portion of the

SUPREME COURT
OF
NEVADA

(O) 1947A

lien. *Id.* at 612, 427 P.3d at 121 ("A party's status as a [bona fide purchaser] is irrelevant when a defect in the foreclosure proceeding renders the sale void."). SFR makes no attempt to distinguish our caselaw here, and we decline to reconsider this conclusion now.

Because we conclude that SFR took the property subject to Deutsche Bank's first deed of trust, we need not reach Deutsche Bank's alternative argument that the district court erred by failing to consider Deutsche Bank's assertion of fraud, unfairness, or oppression.

*CONCLUSION*

Courts applying *Cranesbill* must look first for direction of the homeowner allocating payment at the time payment was made. Then, if the homeowner fails to provide direction, a court must determine if the HOA allocated the payment prior to the dispute over the allocation. The HOA may not, without express direction from the homeowner, allocate the payment so as to forfeit the first deed of trust holder's interest and deprive the homeowner of the security in the home. If allocation by neither the homeowner nor the HOA resolves the question, the court considers principles of justice and equity, which presume that the superpriority lien is paid first, unless the court has a compelling reason to conclude otherwise.

Here, under *Cranesbill*, the homeowner's partial payments to the HOA satisfied the HOA's superpriority lien, so the foreclosure did not extinguish Deutsche Bank's first deed of trust. SFR took possession of the

property subject to the deed of trust. Accordingly, we reverse the judgment of the district court and remand for entry of judgment for Deutsche Bank consistent with this opinion.

_____, J.
Bell

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A